02-09-150-CR













 



 

 

 

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

 

NO. 02-09-00150-CR 

 

 


 
 
 WARREN TEEL
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE 
 
 


 

 

------------

 

FROM THE
396TH District Court OF Tarrant
COUNTY

------------

MEMORANDUM OPINION[1]

----------

I.  Introduction

          In one issue, Appellant Warren Teel appeals
the jury’s guilty verdict, asserting that the trial court abused its discretion
by excluding the testimony of Dr. Barry Norman, a psychologist.  We affirm. 

II.  Factual and
Procedural History

          Teel was charged with committing
aggravated robbery with a deadly weapon after he approached a woman at a gas
station on May 9, 2008; asked her for money; got into her car; and started
beating her with a wooden post.  He also
bit her while trying to take her keys.  He
took her purse and left.

On
July 22, 2008, Dr. Barry Norman conducted a court-ordered competency examination.
 Dr. Norman diagnosed Teel with
schizoaffective disorder with psychosis and mixed substance abuse and opined
that Teel was not competent to stand trial.  The trial court ordered Teel confined to a
state hospital until he regained competence. 
Several months later, a doctor at North Texas State Hospital filed with
the court a report stating that Teel was competent to stand trial.  The trial court entered a judgment of mental competency,
and Teel’s attorney filed a notice of intent to raise the insanity defense.

Before
trial, the State objected to Teel’s proposed admission of Dr. Norman’s
testimony on the basis of relevance, and Teel made a proffer of Dr. Norman’s
testimony.  Dr. Norman opined that, as of
his examination of Teel on July 22, 2008, Teel was suffering from
schizoaffective disorder and was responding to auditory hallucinations, was not
oriented as to time and place, and did not know where he was or what was going
on.  At the end of his examination, he
concluded Teel was not competent to stand trial.

On
cross-examination by the State, Dr. Norman explained the difference between a
competency examination and a sanity examination,[2]
and he stated that he did not perform a sanity examination in this case.  He testified that all of his opinions pertained
to Teel’s status as of July 22, 2008—not May 9, 2008—and that he did not have
an opinion as to Teel’s sanity as of May 9, 2008.  The trial court sustained the State’s
objection and excluded Dr. Norman’s testimony.

Teel
pleaded not guilty to the charge and true to the habitual offender
paragraph.  The jury found Teel guilty, and
the trial court assessed fifty years’ confinement as punishment.  This
appeal followed.

III. 
Analysis

          In his sole issue, Teel complains that the trial court abused its
discretion by excluding Dr. Norman’s testimony because it was relevant, was probative,
and would have assisted the jury in determining an ultimate issue of fact,
i.e., whether Teel was insane.  Specifically,
he argues that Dr. Norman’s testimony would have “provided a ‘small nudge’ in
proving or disproving a fact of consequence to the trial” and that by excluding
Dr. Norman’s testimony, the trial court violated Teel’s due process right to
present his defense.

A.  Standard of Review

We may not disturb a trial court’s evidentiary
ruling absent an abuse of discretion.  Winegarner v. State, 235 S.W.3d
787, 790 (Tex. Crim. App. 2007).  In other words, as long as the trial court’s
decision was within the zone of reasonable disagreement and was correct under
any theory of law applicable to the case, it must be upheld.  Id.
(citing Montgomery v. State, 810
S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on reh’g)).  This is so because “trial courts . . . are
usually in the best position to make the call on whether certain evidence should
be admitted or excluded.”  Id. (citing Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997)).

          “Relevant
evidence” means “evidence having any tendency to make the existence of any fact
that is of consequence to the determination of the action more probable or less
probable than it would be without the evidence.”  Tex. R. Evid.
401.  “[E]xpert
testimony that does not directly rebut the culpable mental state usually may be
excluded at the guilt stage.”  Mays v. State, 318 S.W.3d 368, 381–82
(Tex. Crim. App. 2010) (“In sum, the trial judge was not required to admit any
expert testimony concerning appellant’s mental illness during the guilt stage
because it did not directly rebut his culpable mens rea.”); see also Ruffin v. State, 270 S.W.3d 586, 596 (Tex. Crim. App.
2008) (“Such [expert] evidence may also be excluded if it does not truly negate
the required mens rea.”).  The test for determining insanity is whether,
at the time of the conduct charged, as a result of mental disease or defect,
the defendant did not know his conduct was wrong. Ruffin, 270 S.W.3d at 592.  In this context, “wrong” means “illegal.”  Id.

B.  Analysis

Teel
refers us to Fisher-Riza
v. State, No. 01-08-00264-CR, 2009 WL 4358622 (Tex. App.—Houston [1st
Dist.] Dec. 3, 2009, no pet.) (mem.
op., not designated for publication), arguing that his due process rights were
violated when he was prohibited from presenting Dr. Norman’s testimony.

We
note first that Fisher-Riza is inapposite, as the court addressed expert testimony
about past mental illness and held
that testimony about a defendant’s mental health five years prior to the
instant offense was not too remote.  Id. at *6–7 (holding that
evidence about appellant’s past mental health problems was relevant to her
sanity defense).  Here, Dr. Norman
did not testify about Teel’s past mental health during the proffer,[3]
and he specifically testified that he was unaware of Teel’s mental health
status on the date of the incident at issue.[4]
 Further, he stated that he did not
conduct a sanity examination at the time he evaluated Teel’s competency to
stand trial and that he had no opinion about Teel’s state of mind—sanity or mens rea—on the date Teel committed the instant offense.  Rather, he testified about Teel’s lack of
mental competence to stand trial over a month after the commission of the
offense.  Cf. id.  Under the
circumstances here, we cannot say that the trial court abused its discretion by
excluding Dr. Norman’s testimony during the guilt-innocence phase of trial.[5]  See
Mays, 318 S.W.3d at 381–82; Ruffin, 270 S.W.3d at 596.  We overrule Teel’s sole issue.

IV.  Conclusion

          Having overruled Teel’s sole issue, we
affirm the trial court’s judgment.

 

PER CURIAM

 

PANEL:  MCCOY, J.; LIVINGSTON, C.J.; and GABRIEL, J.

 

DO NOT PUBLISH

Tex. R. App. P. 47.2(b)

                                                              

DELIVERED:  November 24, 2010











[1]See Tex. R. App. P. 47.4.





[2]Dr. Norman testified
that a competency examination involves determining whether a defendant has the
ability to speak and interact with his attorney, to attend courtroom
proceedings, and to understand what is going on in a courtroom.  In contrast, a sanity examination has to do
with whether a defendant was suffering from a debilitating illness at the time
of the alleged offense such that he could not understand that his conduct was
wrong.





[3]In his competency
evaluation report, which the trial court took judicial notice of, Dr. Norman
summarized what Teel told him about his prior mental health issues—inpatient
and outpatient mental health treatment while incarcerated, as well as numerous
visits to John Peter Smith hospital.  The
same information was admitted during the trial through Teel’s testimony and
Teel’s mother’s testimony.





[4]Dr. Norman testified
that during the competency evaluation, Teel told him that he did not know what
happened or why he was in jail.  When
asked whether Teel displayed a decent sense of what is right and what is wrong,
Dr. Norman replied, “I’m not sure that we engaged in that conversation.”





[5]The trial court
granted Teel a running objection to the exclusion of Dr. Norman’s testimony and
offered to treat it as a proffer of testimony regarding any punishment issues
during the punishment phase if the jury found Teel guilty, which Teel accepted.